BRIAN R. MILDENBERG, ESQUIRE (PA BAR ID. 84861) *(pro hac vice)*
brian@mildenberglaw.com
MILDENBERG LAW FIRM, PC
1735 Market Street, Suite 3750
Philadelphia, PA 19103
Tel: (215) 545-4870
Fax: (215) 545-4871

J. CONOR CORCORAN, ESQUIRE (PA BAR ID. 89111) *(pro hac vice)*
conor@jccesq.com
LAW OFFICE OF J. CONOR CORCORAN, P.C.
1500 JFK Boulevard, Suite 620
Philadelphia, PA 19102
Tel: (215) 735-1135
Fax: (215) 735-1175
Counsel for Plaintiff

Attorneys for Plaintiff
DARRYL WILSON

Local Counsel:
Richard J. Idell, Esquire (Bar No. 69033)
THE IDELL FIRM, PC
495 California Street, Suite 500
San Francisco, CA 94104
Tel: (415) 986-2400

*Related cases listed on next page.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL WILSON, | CASE NO. 3:15-cv-00472-VC |
| Plaintiff, | |
| vs. | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR TRANSFER VENUE** |
| UNITED AIR LINES, INC.; CONTINENTAL AIRLINES, INC.; and DOES 1-10, | Date: July 7, 2016 |
| Defendants. | Time: 1:30 p.m. |
| | Courtroom: 4 |
| | Judge: Hon. Vince Chhabria |

*Related cases:*

Johnson, Eldridge v. United Airlines, Inc., et al. 3:12-cv-02730-VC
Miller, Leon v. United Airlines, Inc. et al. 3:15-cv-00457-VC
Palmer, Xavier v. United Airlines, Inc. et al. 3:15-cv-00458-VC
Noble, Paul C. v. United Airlines, Inc. et al. 3:15-cv-00461-VC
Jones Jr., Johnnie E. v. United Airlines, Inc. et al. 3:15-cv-00462-VC
Roane, Glen v. United Airlines, Inc. et al. 3:15-cv-00464-VC
Ricketts, David v. United Airlines, Inc. et al. 3:15-cv-00465-VC
Tom, Lester v. United Airlines, Inc. et al. 3:15-cv-00466-VC
Crocker, Sal v. United Airlines, Inc. et al. 3:15-cv-00468-VC
Manswell, Anthony v. United Airlines, Inc. et al. 3:15-cv-00469-VC
Minter, Karl v. United Airlines, Inc. et al. 3:15-cv-00470-VC
Washington, Erwin v. United Airlines, Inc. et al. 4:15-cv-00471-VC
Wilson, Darryl v. United Airlines, Inc. et al. 3:15-cv-00472-VC
Sherman, Leo v. United Airlines, Inc. et al. 3:15-cv-00473-VC
Haney, Ken v. United Airlines, Inc. et al. 3:15-cv-00474-VC
John, Richard v. United Airlines, Inc. et al. 3:15-cv-00475-VC
Briscoe, Odie v. United Airlines, Inc. et al. 3:15-cv-00476-VC
Hartsfield, Terrence v. United Airlines, Inc. et al. 3:15-cv-00477-VC
///
///

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS OR TRANSFER VENUE**

**I.   STATEMENT OF ISSUES TO BE DECIDED PURSUANT TO L.R. 7-4(a)(3)**

The issues presently before the Court are: (1) whether venue is properly in this district under Title VII's venue provision, 42 U.S.C. § 2000e-5(f)(3); and (2) whether this judicial district is a convenient forum for the parties.

**II.   INTRODUCTION**

There is no reason to dismiss the instant case or to transfer venue to any other federal district, despite United's attempts to remove itself from the jurisdiction of this Honorable Court. Simply stated, Plaintiff challenges, among other things, United's long-term discriminatory Special Assignment practices. For many years, United intentionally doled out secret, unposted special assignments to white pilots while withholding knowledge of those assignments from Plaintiff as an African American pilot, because of the color of his skin. These Special Assignments were provided to white pilots on a nation-wide basis, without regard to their domiciles or assigned bases, including, in many instances, in the state of California.

Despite United's claims to the contrary, United engaged in an intentional practice and policy of providing Special Assignments to white pilots through a secret, "tap on the shoulder" process, whereby, for instance, a pilot who was assigned to a domicile base in Washington, DC, would be provided with a desirable Special Assignment in San Francisco, Denver, or some other location. This practice even included assignments between domiciles the same state, including within California. As a result of this discriminatory practice, Plaintiff was denied the opportunity to partake in many Special Assignments throughout the United system, including at United's bases in California. Moreover, the Chief Pilots of particular domiciles, including the California domiciles, were parties to the discriminatory practice and decisions at issue, which took place in their domiciles, including in California. Accordingly, and for the reasons that

follow, United's venue Motion should be denied.

### III. BACKGROUND

Plaintiff, Darryl Wilson, an African American airline pilot employed by Defendant United Airlines, Inc., filed this action seeking relief from intentional discrimination on the basis of his race and the color of his skin. [Corrected] Seventh Amended Complaint ("7AC") ¶ 1. The instant litigation was initially filed in 2012 as a single, multi-Plaintiff Complaint, and later severed into individual related actions. The individual related actions are now all designated as "coordinated cases" and are being handled together as such for case management purposes. On June 2, 2016, United filed Motions to Dismiss or Transfer Venue in 11 of the related actions, including the instant action.[21] Because each of the 11 Plaintiffs rely upon the same legal and factual bases to support venue in the Northern District of California, the instant Opposition and attached supporting evidence is being submitted simultaneously in each of the 11 actions.

### IV. TITLE VII VENUE

Title VII's special venue provision applies to the venue determination in this case. *Johnson v. Payless Drug Stores Northwest, Inc.,* 950 F.2d 586, 587-88 (9th Cir. 1991). Under this provision, there are three (3) alternative methods of establishing Title VII venue, as follows:

> [A]n action may be brought [1] in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, [2] in the judicial district in which the employment records relevant to such practice are maintained and administered, or [3] in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice….

42 U.S.C. § 2000e-5(f)(3) (bracketed numbers added).

---

[21] The 11 cases in which Motions to Dismiss or Transfer Venue were filed on June 2, 2016 are: *Miller v. United Airlines, Inc. et al.,* 3:15-cv-00457-VC; *Palmer v. United Airlines, Inc. et al.,* 3:15-cv-00458-VC; *Noble v. United Airlines, Inc. et al.,* 3:15-cv-00461-VC; *Jones Jr. v. United Airlines, Inc. et al.,* 3:15-cv-00462-VC; *Roane v. United Airlines, Inc. et al.,* 3:15-cv-00464-VC; *Ricketts v. United Airlines, Inc. et al.,* 3:15-cv-00465-VC; *Manswell v. United Airlines, Inc. et al.,* 3:15-cv-00469-VC; *Wilson v. United Airlines, Inc. et al.,* 3:15-cv-00472-VC; *Sherman v. United Airlines, Inc. et al.,* 3:15-cv-00473-VC; *John v. United Airlines, Inc. et al.,* 3:15-cv-00475-VC; and, *Briscoe v. United Airlines, Inc. et al.,* 3:15-cv-00476-VC.

In enacting Title VII, Congress intended to provide discrimination plaintiffs with broad latitude and choice in selecting a forum. "[T]his broad provision for alternative forums was necessary to support the desire of Congress to afford citizens full and easy redress of civil rights grievances." *Passantino v. Johnson and Johnson Consumer Products,* 212 F.3d 493, 504 (9th Cir. 2000) (quoting *Richardson v. Alabama State Board of Education,* 935 F.2d 1240, 1248 (11th Cir. 1991)).[22] In response to a Motion to Transfer Venue, the Court "may [also] make factual findings necessary to resolve motions to dismiss for improper venue…." *Bryant v. Rich,* 530 F.3d 1368, 1376 (11th Cir.2008); *see also Lawrence v. Dunbar,* 919 F.2d 1525, 1530 (11th Cir.1990) (courts should apply the summary judgment standard when ruling on a motion to dismiss for improper venue). In the instant case, Plaintiff meets Title VII's venue requirements, and United's Motion should be denied.

### IV.   ARGUMENT

**A.   Plaintiff Satisfies the Title VII Venue Burden**

    **1.   The Unlawful Employment Practices Were Committed, In Large Part, In California**

The first of three alternatives for Title VII Venue is "any judicial district in the State in which the unlawful employment practice is alleged to have been committed." 42 U.S.C. § 2000e-5(f)(3). The instant judicial district comprises a judicial district in a "State in which the unlawful employment practice is alleged to have been committed." *Id.* The allegation that the unlawful employment practice was committed in California appears in Plaintiff's 7AC, ¶4, and is further

---

[22] It is also worth noting that in *Gilbert v. General Elec. Co.,* 347 F. Supp. 1058 (E.D. Va. 1972), the court found that the far-reaching venue provision was especially appropriate for class actions under Title VII because "[s]uch actions, which are particularly appropriate and plentiful under Title VII, are often of interstate or intrastate character, stretching in geographical impact beyond the limits of particular divisions or state districts." *Id.* Although this case is not a class action, similar concerns are implicated, because the alleged unlawful practices at issue, involving pilots who fly to different states throughout the nation, are "of interstate or intrastate character, stretching in geographical impact beyond the limits of particular divisions or state districts." *Id.*

explained in the Declaration of Richard John, Leon Miller, and Glen Roane ("Venue Decl."), attached hereto at **Exhibit A**

Defendants challenge Plaintiff's theory of venue with declarations claiming that pilots generally do not receive Special Assignments outside of their domicile. Contrary to Defendants' unfounded claims that Special Assignments are limited by domicile or geographic location of the pilot's work base, Plaintiff has alleged that Special Assignments are nationwide, were doled out without regard to domicile, and that many white pilots were tapped on the shoulder for Special Assignments outside of their domiciles, to the exclusion of black pilots. *See* Plaintiff's 7AC, ¶¶55-57.

In addition, and in response to Defendants' assertions in their declarations, Plaintiff relies upon the points made in the Venue Decl., many of which cite to and incorporate by reference United's own policy documents, as follows:

A. "[T]he challenged discriminatory practices include many Special Assignments that were provided to white pilots in California, despite their domicile in Cities all over the United system." Venue Decl., Ex. A, at ¶ 3

B. "Special Assignments are not, and never have been, limited by a pilot's domicile." *Id.* at ¶ 5.

C. "Special assignment opportunities may be available in any one of [United's] Chief Pilot offices, Flight Training facilities, or WHQ (Willis Tower) and could involve work in Flight Operations, Corporate Safety, Network Operations Control, or any other operating division." *Id.* at page 3 (quoting United's policy documents).

D. "Temporary and special assignments may involve changes in [a pilot's] …location." *Id.* at ¶ 6 (quoting United's policy documents).

E. "It is not our intent, nor would it be practical, to go through the normal posting and selection process for regular, full time positions[, in reference to Special Assignments]. As such, there is no 'application process.'" *Id.* at page 3 (quoting United's policy documents).

F. "[P]ilots will be able to identify both the geographic locations and general work area for which they wish to be considered." *Id.* at page 3 (quoting United's policy documents).

G. "United recently posted a Special Assignment on TALEO entitled 'Special Assignment – Line Pilot – Nation Wide (Flight Operations) (Job Number: UN100000755-CC).' This posting was active as of June 14, 2016." *Id.* at ¶ 13 (quoting United's posting).

H. "United notes that it maintains a trip pass authorization called a 'Company Business Pass' that 'authorizes a coach seat on a flight for **commuting to and from Home Base to assigned Base for Special Assignments**…. These passes are issued through the Chief Pilots Offices….'" *Id.* at ¶ 14 (quoting United's policies).

I. "'[United's] Line Operations group consists of permanent and special assignment positions. The special assignment (temporary) positions play a significant role in completing the Line Operations Team….' [] There is no geographic or domicile requirement in connection with Line Operations Special Assignments. *Id.* at ¶ 14 (quoting United's policies).

J. "30 unposted Special Assignments and unposted promotional opportunities… were confidentially offered to non-African American pilots, all in the State of California, from 2008 through 2012." *Id.* at ¶ 22 (attaching list at Exhibit F to the Venue Decl.).

K. "Captain Dobias, who is listed on Exhibit F, was assigned to his California Special assignment notwithstanding the fact that he was domiciled in Denver." *Id.* at ¶ 25.

L. "In addition, Alan Twigg, also listed on Exhibit F, was assigned to SFO for Special Assignment notwithstanding the fact that he was domiciled in Washington, DC." *Id.* at ¶ 26.

M. "In addition, Andy Allen, also listed on Exhibit F, was assigned to SFO for Special Assignment notwithstanding the fact that he was domiciled in Chicago. *Id.* at ¶ 27." *Id.* at ¶ 27.

N. "Captain Jon Russell, in or around 2015, received a 2 month Special Assignment in Los Angles as Assistant Chief Pilot, notwithstanding the fact that he is domiciled in SFO." *Id.* at ¶ 29.

O. "Eric Hannum, in or around 2012, was domiciled in Houston. In June 2012, while still domiciled in Houston, he was provided with a one month Special Assignment in Los Angeles." *Id.* at ¶ 30.

P. "Jeff Pierce, in or around 2015, was domiciled in the Denver Training Center. He was tapped on the shoulder out of Denver and provided with a 2 month Special Assignment as Los Angeles Assistant Chief Pilot." *Id.* at ¶ 31.

Q. "CS Defeo, in 2015, was also provided with a 2 month Special Assignment in Los Angeles from her domicile in SFO." *Id.* at ¶ 32.

R. "In or around 2013, approximately 10 white pilots were assigned to bases all over the nation, from their domiciles, as part of the PBS training program." *Id.* at ¶ 33.

S.  "In 2012, Laura Logan was provided with a Special Assignment in Houston, as Assistant Chief Pilot, from her domicile in Washington, DC." *Id.* at ¶ 34.

T.  "We have additionally identified approximately 40 other Special Assignments provided to non-African Americans from January through May of 2012.  None of these Special Assignments were posted in TALEO, but were all 'taps on the shoulder.'  This list is attached at Exhibit G." *Id.* at ¶ 35.

U.  "Most, if not all of these pilots, were assigned outside of their domiciles as part of the Change Management program in connection with the merger between Continental and United.  Many were assigned to SFO because SFO at that time held the maintenance base and required a significant amount of Special Assignments for Change Management to incorporate the changes occasioned by the merger." *Id.* at ¶ 36.

V.  "[T]he Chief Captain in a particular domicile where a secret special assignment is going to be made available necessarily must participate in the ultimate 'tap on the shoulder' decision.  In other words, the Chief Pilots in SFO and LAX were necessarily involved in implementing the selection of candidates for secret, unposted positions for the special assignments at their domiciles, in conjunction with other Chief Pilots who would recommend particular pilots to be 'tapped on the shoulder.'  The Vault was nationwide, including in California, with the purpose to keep the assignments from African American pilots, wherever they were located.  This racially offensive employment practice occurred through United's system, and definitely in California.  Although the current Chief Pilot of SFO is African American, this is a recent development, and occurred after the discrimination charges at issue in this litigation.  Plaintiffs' claims go back to at least 2008, and beyond if the court ultimately allows a continuing violation theory." *Id.* at ¶ 42.

W.  "United never distinguished between or among domiciles when it came to doling out cushy assignments in secret to non-African American pilots." *Id.* at ¶ 43.

X.  "[B]ecause the special assignments and promotions were unposted, there are no, or are only incomplete, records of them in TALEO, United's computerized HR system.  Rather, the records of these assignments, and files concerning the many secret, unposted assignments and promotions in California, would reside at the Flight Offices of the major airports in California, including LAX and SFO." *Id.* at ¶ 44.

Y.  "United's 'Position Approval Form'… is used to approve Special Assignments, but specifically references the fact that '**DO NOT POST**' positions exist for '**Pre-Selected Employees**.'  These positions are not posted, and there is no centralized record keeping for these Special Assignments.  Rather, the records of the employment positions are kept by the Flight Offices in the relevant domiciles.  For California Special Assignments, this would be in the Flight Offices of SFO and LAX." *Id.* at ¶ 45.

With reference to Title VII venue, there is only one conclusion that can be reached given these facts:  California is a "State in which the unlawful employment practice is alleged to have been committed."  42 U.S.C. § 2000e-5(f)(3).  Therefore, Title VII confers venue, and any

arguments of United to the contrary are meritless. There was no improper forum shopping, no improper strategic selection of forum. Rather, United's own actions in engaging in the unlawful employment practice in California are what entitle Plaintiff to file his case in California. It makes the most sense for such a practice to be challenged in a State where the practice is substantial. Plaintiff is entitled to pick this forum, among other possible forums, because Title VII's "broad provision for alternative forums was necessary to support the desire of Congress to afford citizens full and easy redress of civil rights grievances." *Passantino,* 212 F.3d at 504.

United's request to remove this case from the forum state in which a large number of positions were secretly doled out and withheld from black pilots is contrary to Title VII's purpose in allowing Plaintiff full and easy redress of his grievances, which include the many secret California assignments and promotions that were intentionally withheld from Plaintiff's knowledge, by not posting them or informing him of them, because he is black. Finally, and crucially, the Ninth Circuit expressly held in *Passantino* that "venue is proper in both the forum *where the employment decision is made* and *the forum in which that decision is implemented or its effects are felt*. 212 F.3d at 506 (emphasis added). Contrary to United's arguments, the holding is not limited to the place where the employee works, but also where the "decision was made." *Id.* With regard to Special Assignments in California, the "decision" to engage in the secretive "tap on the shoulder" practice was made by the then-Chief Pilots of SFO and LAX. California is a state where the unlawful practice occurred.

2. **The Employment Records of All Unposted Special Assignments and Unposted Promotional Opportunities in San Francisco are Located in San Francisco**

Although the previous section shows that Plaintiff has met the first of three alternative Title VII venue provisions, and Plaintiff could stop there, it is also clear that the second venue provision applies in this case: "the employment records relevant to such practice are maintained and administered," 42 U.S.C. § 2000e-5(f)(3), in San Francisco, within the Northern District of

California. This comports with Plaintiff's allegations in his 7AC. *Id.* ¶ 4 (employment records located in Northern District of California). As explained in the Venue Decl., because the offending practices were, by definition, unposted, and secret, there is either no record of them or incomplete record of them in United's centralized HR system. *See* Venue Decl., Ex. A, at ¶¶ 44-45. In fact, United's very own Position Approval form admits the existence of "DO NOT POST" positions and "Pre-Selected" employees. *Id.* ¶ 45.

United argues that Plaintiff's "personnel file" is in his home jurisdiction. But, in this instance, the personnel file is not what the express text of Title VII refers to. Rather, it refers to "the employment records *relevant to such practice*." 42 U.S.C. § 2000e-5(f)(3) (emphasis added). The "such practice" referenced is the allegedly unlawful employment practice. In the case of denial of Special Assignments in California, Plaintiff's personnel file does not comprise "the employment records relevant to such practice." *Id.* Rather, the "relevant" records exist in the Flight Offices in SFO and LAX. Venue Decl., Ex. A, at ¶¶ 44-45. The most relevant records of these "DO NOT POST" assignments, because they were kept secret and not posted, would exist only in the files of the domicile of the Special Assignments. The only way to unwind this practice is to review the local domicile records kept on Special Assignments that were provided in that domicile, because they were not posted in United's centralized system. United's reference to Plaintiff's "personnel file" is a red herring, which should be rejected.

### 3. Plaintiff Would Have Worked in the Northern District of California But for the Alleged Unlawful Employment Practice

Plaintiff again could stop the analysis here, but it is worth noting that a fair reading of the 7AC compels the conclusion that Plaintiff would have worked in this judicial district "but for the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(f)(3). This is the third reason that Title VII venue is proper. Defendants cannot defeat Title VII's venue provision by the reference to the very unlawful practice of which Plaintiff complains. In other words, United cannot use the

fact that Plaintiff was unaware of the positions, or did not specifically apply for them, to show that Plaintiff would not have received them, because the lack of knowledge of the positions was part of United's intentional racially discriminatory design.  Plaintiff should be excused from a strict "but-for" requirement under the factual scenario at hand, just as the requirement to apply for positions is relaxed under Title VII when positions are not posted or held to be secret.  United should not have the benefit of its own unfair practices in requesting venue change.

B.    **The Northern District of California is a Convenient Venue**

First, United's claim that Plaintiff's choice of forum is entitled to little weight are contrary to the analysis *supra* showing that Title VII Plaintiffs are accorded substantial and broad choice in venue under three alternative venue provisions.  Again, Title VII's "broad provision for alternative forums was necessary to support the desire of Congress to afford citizens full and easy redress of civil rights grievances." *Passantino,* 212 F.3d at 504.

Second, United's claim that transfer of the case will promote the convenience of parties and witnesses is also false and misguided.  In order to prove the claims concerning the illegal employment practice of discriminatory unposted, secret, special assignments and promotions, persons from all over the United network will need to be called as witnesses, including, by necessity, many of the Chief Pilots of San Francisco and Los Angeles who have records and knowledge of the large number of secret claims that were doled out.  It is true that some witnesses may work in Plaintiff's current domicile, like Plaintiff's current Chief Pilot, but many other witnesses who will be noticed to appear will come right from SFO, and other locations, to testify about the many secret, unposted positions that were withheld from black pilots.  This will be part of Plaintiff proving his claim.

United is also subject to 17 different related Plaintiff actions, all over the very same practices, several of which it has already conceded have proper venue in the Northern District of

California. Therefore, United will already be litigating the very same issues, pursuant to a coordinated Case Management Order, in the Northern District of California. Many of these related Plaintiffs will also be witnesses for Plaintiff. If anything, it would be more inconvenient for United to litigate the same issues in multiple venues, when these issues are already being litigated in the instant judicial district. Finally, because a great number of assignments at issue were in California, this Court has a great interest and stake in the outcome, to assure that United's operations within its venue are no longer marred by illegal race discrimination.

## V.     CONCLUSION

For the foregoing reasons, United's Motion should be denied.

Respectfully submitted this 16th day of June, 2016.

*/s/ Brian R. Mildenberg*
BRIAN R. MILDENBERG, ESQUIRE (PA BAR ID. 84861) *(pro hac vice)*
brian@mildenberglaw.com
MILDENBERG LAW FIRM, PC
1735 Market Street, Suite 3750
Philadelphia, PA 19103
Tel: (215) 545-4870
Fax: (215) 545-4871

J. CONOR CORCORAN, ESQUIRE (PA BAR ID. 89111) *(pro hac vice)*
conor@jccesq.com
LAW OFFICE OF J. CONOR CORCORAN, P.C.
1500 JFK Boulevard, Suite 620
Philadelphia, PA 19102
Tel: (215) 735-1135
Fax: (215) 735-1175
Counsel for Plaintiff

Attorneys for Plaintiff
DARRYL WILSON

Local Counsel:
Richard J. Idell, Esquire (Bar No. 69033)
THE IDELL FIRM, PC
495 California Street, Suite 500
San Francisco, CA 94104
Tel: (415) 986-2400

## CERTIFICATE OF SERVICE

I, Brian R. Mildenberg, Esquire hereby certify that on the 16th day of June, 2016, Counsel of record for all Defendants were served with the foregoing Opposition by ECF filing.

Respectfully submitted this 16th day of June, 2016.

*/s/ Brian R. Mildenberg*
BRIAN R. MILDENBERG, ESQUIRE (PA BAR ID. 84861) *(pro hac vice)*
brian@mildenberglaw.com
MILDENBERG LAW FIRM, PC
1735 Market Street, Suite 3750
Philadelphia, PA 19103
Tel: (215) 545-4870
Fax: (215) 545-4871

Attorney for Plaintiff
DARRYL WILSON